# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KEVIN TILLERY,                )<br>                )<br>    **Plaintiff,**                )<br>                )<br>                )<br>v.                )<br>                )<br>                )<br>**NANCY A. BERRYHILL, Acting**                )<br>**Commissioner of the Social Security**                )<br>**Administration,**                )<br>                )<br>    **Defendant.**                )  | Case No. CIV-18-886-STE |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

## I. PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for benefits. Following three administrative hearings,[1] an Administrative Law Judge (ALJ) issued a partially unfavorable decision, which deemed Plaintiff not disabled from October 1, 2010 through November 3, 2016. (TR. 15-30). The Appeals Council denied Plaintiff's request for review. (TR. 6-8). Thus, the decision of the ALJ became the final decision of the Commissioner and Plaintiff challenges the unfavorable portion of the decision.[2]

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 1, 2010, his alleged onset date. (TR. 17). At step two, the ALJ determined that Mr. Tillery had the following severe impairments: degenerative disc disease of the cervical spine, status post-surgery; hypertension; anxiety disorder; and

---

[1] Plaintiff's first hearing was set for November 6, 2014, but Plaintiff failed to appear and the ALJ dismissed the case. (TR. 96-97, 169). The Appeals Council vacated the Order of dismissal and remanded the case back to the ALJ, having found good cause for Mr. Tillery's failure to appear. (TR. 99-100). A second hearing was held on July 14, 2016, but because the ALJ deemed the record incomplete, a third hearing was scheduled which occurred September 20, 2016. (TR. 40-87).

[2] This Court would not have jurisdiction to review the favorable portion of the decision. *See Alford v. Commissioner*, Case No. 18-2075, slip op. at 4-5 (10th Cir. Apr. 5, 2019) (noting that 42 U.S.C. § 405(g) does not allow "judicial review of agency decisions that are favorable to the claimant.").

major depressive disorder. (TR. 18). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 18).

At step four, the ALJ concluded that Mr. Tillery retained the residual functional capacity (RFC) to:

> [P]erform light work as defined in 20 CFR 416.967(b) except he can lift/carry/push and pull 20 pounds occasionally and 10 pounds frequently; he can stand and/or walk for 6 out of 8 hours and sit for 6 out of 8 hours in an 8-hour workday. He can occasionally climb stairs and ramps as well as occasionally balance, kneel, crouch, crawl, and stoop. He can never climb ladders, ropes, and scaffolds. He can perform no overhead reaching with the bilateral upper extremities. He can perform simple tasks with routine supervision and is able to relate adequately with co-workers and supervisors for superficial work purposes. He is also able to adapt to work situations.

(TR. 19). Based on a finding that Mr. Tillery had no past relevant work,[3] the ALJ proceeded to step five and presented several limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy Plaintiff could perform. (TR. 83). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles. (TR. 83-84). The ALJ adopted the testimony of the VE and concluded that prior to November 4, 2016, Mr. Tillery was not disabled based on his ability to perform the identified jobs. (TR. 28-29). The ALJ further concluded that on November 4,

---

[3] (TR. 28).

2016, Mr. Tillery turned 55 and his "age category" changed, rendering him disabled under Medical-Vocational Guidelines Rule 202.04 beginning that date. (TR 28-29).[4]

## III. STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## IV. ISSUES PRESENTED

On appeal, Plaintiff alleges the ALJ erred in her consideration of Mr. Tillery's right shoulder impairment and testicular cyst.

---

[4] The Medical-Vocational Guidelines, otherwise known as "The Grids" are matrices of the "four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Daniels v. Apfel*, 154 F.3d 1129, 1132 (10th Cir. 1998). Through the Grids, the Secretary has taken administrative notice of the number of jobs that exist in the national economy at the various functional levels (*i.e.,* sedentary, light, medium, heavy, and very heavy). 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(b).The Grids may provide a shortcut in certain circumstances to determine whether a claimant can perform other work by obviating the need for a VE's testimony. *See Trimiar v. Sullivan,* 966 F.2d 1326, 1332 (10th Cir. 1992).

## V. PLAINTIFF'S RIGHT SHOULDER IMPAIRMENT

Mr. Tillery alleges that the ALJ failed to account for limitations owing to pain and weakness in Plaintiff's right shoulder and muscle wasting in his right arm. (ECF No. 13:7-11). The Court disagrees.

In the decision, the ALJ acknowledged an abundance of evidence concerning Plaintiff's right shoulder and arm impairment. (TR. 21-24). For example, the ALJ discussed:

- Plaintiff's complaints of right shoulder pain and weakness;
- Use of medication to treat the pain;
- Tenderness and decreased range of motion in Plaintiff's right shoulder;
- An MRI of Plaintiff's right shoulder which showed degenerative changes;
- Muscle-wasting in Plaintiff's right-sided biceps, triceps, and forearm; and
- Numbness and pain in Plaintiff's right arm.

(TR. 21-24). Ultimately, in evaluating the effect of Mr. Tillery's shoulder/arm impairment, the ALJ stated: "although [Plaintiff] may have some continued right extremity symptoms, the limitation of no overhead reaching is adequate to account for same." (TR. 26). This limitation was included in the RFC. *See* TR. 38.

Mr. Tillery contends that "due to [his] muscle wasting in his right arm and decreased strength due to his tendonitis and split tendon, he will necessarily struggle to do any repetitive work with his right arm" and "the ALJ failed to account for the decreased sensation in his right upper extremity and whether or not that will result in him dropping

5

things and losing grip while working." (ECF No. 13:10, 11). But no medical professional has stated that Plaintiff could not perform repetitive work with his right arm or that he had difficulty with gripping. Mr. Tillery's conclusions that he "will necessarily struggle" and "lose his grip" is simply insufficient. *See Jimison ex rel. Sims v. Colvin,* 513 F. App'x 789, 792 (10th Cir. 2013) (requiring "record support" for a claimed restriction); *Arles v. Astrue*, 438 F. App'x 735, 740 (10th Cir. 2011) (rejecting plaintiff's claim a limitation should have been included in his RFC because "such a limitation has no support in the record"). Plaintiff also argues that because none of his physicians had limited him to "only overhead movement" that he is therefore limited in *all* movement involving his right upper extremity. (ECF No. 13:11). But "the absence of evidence is not evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir. 1993). Just because no treating physician has opined that Plaintiff is only limited in overhead reaching, does not provide support for the proposition that Mr. Tillery is unable to move his right arm in any direction.

The ALJ considered the evidence related to Plaintiff's right arm and shoulder and accounted for related limitations in the RFC. Accordingly, the Court finds no error.

## VI. PLAINTIFF'S TESTICULAR CYST

The Court finds reversible error in the ALJ's failure to properly consider Plaintiff's testicular cyst and related pain.

### A. Evidence Regarding Plaintiff's Testicular Cyst and Related Pain

On August 18, 2011, Plaintiff reported to the emergency room complaining of testicular pain. (TR. 456). Examination noted swelling and tenderness in the right testicle

6

and an ultrasound revealed a cyst measuring 4.04 x 2.15 x 4.06 cm adjacent to the right testicle. (TR. 458). On December 8, 2011, another ultrasound was performed which confirmed the existence of the mass on the right testicle. (TR. 479, 626). Approximately one week later, Plaintiff arrived at the emergency room via ambulance complaining of testicle pain, which he stated had been an ongoing problem for approximately three years. (TR. 448). Plaintiff noted that the pain was then currently "4 out of 10," "worsened with movement," and "worsened and modified by being out of his pain medicine." (TR. 448). Mr. Tillery was given intravenous morphine at the hospital and released with a prescription for Ultram to help manage the pain. (TR. 449).

On January 9, 2012, Plaintiff's urologist performed a "spermatic cord block" on Plaintiff's right testicle in an attempt to relieve the pain and identify whether the pain was from his testicle or possible nerve pain or lumbar disc disease. (TR. 476). One month later, on February 9, 2012, Plaintiff submitted a "Function Report" to the SSA which contained the following statements relevant to his testicle pain:

- I am under severe cronic [sic] pain with cyst on my testicle. It is more severe when I bend or move in any way. When I am doing nothing but laying down it throbs constantly. I am unable to think about nothing but the pain, to concentrate on simple task[s] is hard to do;

- There is always throbbing down by my right testicle. I wake up constantly in pain;

- Sitting is painful, bowel movements cause severe pain;

- I have severe pain when bending, trying to push, strain or pull;

7

- The pain has kept me from all activitys [sic] that requires much movement, I have to stay still for most part. All I think about is pain, my life has changed drastically.

(TR. 352-356).

On April 3, 2012, an SSA consultative physician examined Mr. Tillery, noting Plaintiff's claim that his testicular cyst continues to grow and is causing him "excruciating pain" which was "constantly a 10/10 which limit[ed] all of his activities at home" and ability to work. (TR. 468). A February 4, 2013 record from OU Medical noted that Mr. Tillery had the cyst removed via a spermatocelectomy on July 20, 2012. (TR. 599). During that visit, Plaintiff reported that although the pain had somewhat improved post-operatively, he still continued to have some pain. (TR. 599). Plaintiff was also told that closing off of the ilioinguinal nerve[5] may be pursued as another means of pain control. (TR. 599). On March 11, 2013, Plaintiff returned to OU Medical for a follow-up regarding his testicular pain, which he then stated had begun radiating pain into his medial thigh/hip. (TR. 596). The examining physician noted that Mr. Tillery had an appointment scheduled with a urologist the following month. (TR. 596). On October 10, 2013, a progress report noted indicated that Mr. Tillery had been seen on June 10, 2013 for scrotal pain, but that he had to reschedule his urology appointment due to scheduling and cost. (TR. 588).

---

[5] The ilioinguinal nerve originates from first lumbar root, passes around the posterior abdominal wall over quadratus lumborum and Iliacus, then travels under external oblique, enters inguinal canal & descends to supply sensory fibers to the skin of the superior part of the scrotum and the root of penis. *See* http://www.wheelessonline.com/ortho/Ilioinguinal_nerve

## B. The ALJ's Consideration of Plaintiff's Testicular Cyst and Related Pain

Plaintiff alleges the ALJ erred by failing to: (1) fulfill her duty of inquiry at the administrative hearing by asking questions concerning Plaintiff's cyst and related pain and (2) determine the effect of the cyst and related pain on the RFC. (ECF No. 4-7).[6] The Court agrees with Mr. Tillery.

### 1. ALJ's Duty of Inquiry/Development of the Record

"[A]dministrative disability hearings are nonadversarial … and the ALJ has a duty to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Wall v. Astrue*, 561 F.3d 1048, 1062–63 (10th Cir. 2009) (internal quotation marks and citation omitted). This duty is heightened when the claimant is unrepresented. *Henrie v. U.S. Dept. of Health and Human Services*, 13 F.3d 359, 360-361 (10th Cir. 1993). But an ALJ's duty to develop the record is *not* unqualified. *Id.* The duty is one of inquiry, to inform the ALJ of the relevant facts and to hear the claimant's version of those facts. *Younger on Behalf of Younger v. Shalala*, 30 F.3d 1265, 1268 (10th Cir. 1994). In assessing the duty of inquiry, the Court must determine whether, at the

---

[6] Plaintiff also argues that the ALJ failed to find the testicular cyst as a severe impairment at step two. (ECF No. 4-5). But Mr. Tillery concedes that such an error is harmless based on the ALJ's determination that Plaintiff had suffered from at least one severe impairment at step two, and then proceeded with the remainder of the disability analysis. *See* ECF No. 13:5; *Barrett v. Astrue,* 340 F. App'x 481, 484 (10th Cir. 2009) ("[O]nce an ALJ finds that a claimant has at least one severe impairment, he does not err in failing to designate other disorders as severe at step two, because at later steps the agency 'will consider the combined effect of all the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.'") (quoting 20 C.F.R. § 404.1523).

9

hearing, the ALJ asked sufficient questions to ascertain: (1) the nature of a claimant's alleged impairments, (2) what on-going treatment and medication the claimant is receiving, and (3) the impact of the alleged impairment on a claimant's daily routine and activities. *Musgrave v. Sullivan,* 966 F.2d 1371, 1374–1375 (10th Cir. 1992).

## 2. ALJ's Duty to Evaluate Plaintiff's Subjective Symptoms

Social Security Ruling (SSR) 16-3p provides a two-step framework for the ALJ to consider a claimant's symptoms, including pain, and determine the extent to which the symptoms limit the claimant's ability to work. SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). First, the ALJ must make a threshold determination regarding "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.*, at *2. Second, the ALJ will evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which they limit an individual's ability to perform work-related activities. *Id.* At step two, the ALJ will examine the objective medical evidence, the claimant's statements regarding his symptoms, information from medical sources, and "any other relevant evidence" in the record. *Id.*, at *4. SSR 16-3p also directs the ALJ to consider the following seven factors in evaluating the intensity, persistence, and limiting effects of the claimant's symptoms:

- Daily activities;
- The location, duration, frequency, and intensity of pain or other symptoms;
- Factors that precipitate and aggravate the symptoms;

- The type, dosage, effectiveness, and side effects of any medication;

- Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

- Any measures other than treatment a claimant has used to relieve pain or other symptoms; and

- Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.*, at *7. Finally, the ALJ must "provide specific reasons for the weight given to the [claimant's] symptoms, [which are] consistent with and supported by the evidence, and [ ] clearly articulated" for purposes of any subsequent review. SSR *Id.*, at *9.

### 3. Error in The ALJ's Consideration of Plaintiff's Testicular Cyst and Related Pain

In the present case, Mr. Tillery was unrepresented at the hearing, which heightened the ALJ's duty to develop the record. *See supra*. At the hearing, the ALJ asked Mr. Tillery:

- "Why do you think you are disabled?" and

- "[S]pecifically, what's keeping you from working?"

(TR. 80-81). Plaintiff identified his right arm problems and depression, and the ALJ then asked him "Anything else?" to which he answered "Right now, no that's all I can think of." (TR. 81).

The hearing occurred on September 20, 2016. The record contained the objective evidence of Plaintiff's testicular cyst and related pain from August 2011 through October

11

2013 and Plaintiff's February 2012 function report where he described, in detail, how his testicular pain had limited him. *See supra*. In July 2012, the cyst which was causing the pain was surgically removed, and in 2013 Plaintiff reported some pain relief following the surgery. *See supra*. It is possible that by the time of the hearing, Mr. Tillery was not suffering testicular pain to the extent that he had previously, which could explain his failure to identify the pain as affecting his ability to work. Although the Court will not speculate in that regard, the Court will conclude that the ALJ should have further developed the record and questioned Plaintiff regarding the extent of his testicular pain and possible limitations stemming therefrom based on the evidence in the record. *See Olden v. Astrue*, No. CIV-07-453-M, 2008 WL 552752, at *3 (W.D. Okla. Feb. 28, 2008) (stating that "The ALJ's open-ended, non-specific questions such as, 'Now, anything else you feel like you need to tell me … anything that would affect your ability to work?,' were inadequate … to satisfy the ALJ's heightened duty to learn Plaintiff's version of the pertinent facts regarding the impact of his mental impairment" when the plaintiff was unrepresented and the record contained evidence of a specific impairment.).

In addition to erring in her duty to develop the record, the Court finds that the ALJ inadequately considered the effect of Plaintiff's testicular pain on the RFC. As stated, in considering Plaintiff's subjective allegations, the ALJ was required to:

1. make a threshold determination regarding whether there existed an underlying impairment that could reasonably be expected to produce a claimant's pain;

2. evaluate the intensity and persistence of the claimant's pain to determine the extent to which it limited an individual's ability to perform work-related activities, examining the objective medical evidence, the claimant's statements regarding her symptoms, information from medical sources, and "any other relevant evidence" in the record; and

3. provide specific reasons for the weight given to the [claimant's] symptoms, which are supported by the evidence, and clearly articulated for purposes of any subsequent review.

See supra, SSR 16-3p.

In evaluating Mr. Tillery's subjective allegations, the ALJ stated:

[T]he claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported for the reasons explained in this decision.

In terms of the claimant's alleged impairments and resulting functional limitations, the undersigned finds the claimant's testimony and prior statements to the Administration not fully consistent with the objective medical evidence of record for a number of reasons, discussed in greater depth below. Instead, the residual functional capacity reached herein is consistent with the objective medical evidence, clinical findings, longitudinal medical history, and observations of the claimant's treating and examining providers during this time. As well, the evidence of record does not support the claimant's allegation of greater restriction and symptomology.

(TR. 20).

The ALJ then summarized the medical records pertaining to Plaintiff's testicular cyst, including his complaints of pain related to the cyst, medication which had been prescribed, the procedures which had been performed, and his reports of continued post-operative pain. (TR. 22-24). The ALJ also mentioned the February 2012 function report, but stated only that it had contained a discrepancy with another function report regarding

Plaintiff's preparation of meals, his ability to shop, and difficulty following instructions. (TR. 21). Ultimately, the ALJ made specific findings regarding Plaintiff's:

- right shoulder pain and related limitations;
- lower extremity weakness and need for a cane; and
- limitations regarding Plaintiff's mental health.

(TR. 26). But these specific findings did not address the impact of Plaintiff's testicular pain in the RFC. In his function report, Plaintiff complained of numerous limitations caused by the pain, which, in turn, were consistent with the medical evidence. The ALJ acknowledged the allegations of pain and related evidence, but failed to explain the effect of the pain on Mr. Tillery's ability to work. This failure constitutes reversible error under SSR 16-3p and remand is warranted.

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the partially unfavorable portion of the Commissioner's decision.

ENTERED on April 16, 2019.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE